RALPH BARBIERI *et al. vs.* GILBERT DEMORANVILLE.

JUNE 25, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This is an employer's petition for review of a preliminary agreement under the workmen's compensation act, general laws 1938, chapter 300, as amended. Following a hearing in the superior court, the trial justice found that in his judgment the respondent employee was then only partially disabled, and therefore he reduced his compensation from $28 per week for total incapacity to $18 per week for maximum partial incapacity. From the entry of a decree to that effect, the respondent duly appealed to this court.

The employee, who is thirty-nine years of age, had been employed for seventeen years by petitioners, a copartnership doing business as E. M. Young Company, which was engaged in building summer houses and garages. On August 4, 1950, while helping to unload a truck owned by his employer, he slipped on some bricks and a mortar tub weighing between 600 and 700 pounds fell on him.

The injury was described in the preliminary agreement as a "Contusion of sacral region." It later developed that the employee suffered a ruptured disc, and it was agreed that no question was to be raised by the employer because of this discrepancy, and that the parties would treat the preliminary agreement as if a ruptured disc had been referred to therein. Only two witnesses were presented at the hearing, the employee's own doctor, called by petitioners, and the employee himself.

Doctor Caroll M. Silver, a specialist in orthopedic surgery, testified that he first saw respondent on August 5, 1950, the day after his injury. At that time he complained of severe pain in his lower back. Doctor Silver prescribed complete rest, a back support, and physiotherapy to the lower back. In September 1950 the doctor first suspected something more serious than a mere back injury. The symptoms of pain by

respondent indicated that he might be showing the results of a herniated lumbar disc injury with sciatic nerve irritation.

After consultation with Dr. Wilfred Pickles, who also believed that clinically the picture was somewhat characteristic of a disc injury, a myelogram was performed on February 13, 1951. It showed a narrowing of the pantopaque column, which led Dr. Silver to conclude that there was a herniated intervertebral disc at the fourth lumbar level. He and Dr. Pickles agreed that exploration of the lumbar spine was advisable and recommended such operation to respondent, but it was not performed immediately because the employee stated he was nervous and wanted a little more time to regain his strength. However, such operation was performed by Dr. Silver on January 14, 1952. He found that the lumbosacral disc also presented herniation, and this was removed together with the fourth lumbar disc which had shown the defect in the myelogram. The employee was up and walking after the fourth or fifth day and was discharged from the hospital on January 20, 1952.

The respondent was given a McClelland brace to support his back, and walking and physiotherapy were advised. He wore the back support until the end of June, when he was advised to discard the brace entirely and to stop physiotherapy, which was discontinued June 30, 1952. As of that date Dr. Silver testified: "I was very satisfied with his progress." The respondent was not then limited in the use of either leg and walked with a normal gait. He could flex the spine so that his fingertips were within twelve inches of the floor, and there was no spasm in the erector spinal muscles or any evidence of atrophy in the legs.

When the doctor next saw respondent on August 9, 1952 he felt that he might be considered to be partially disabled and capable of doing light work. At his next examination on September 5, 1952 he considered respondent "able to do light work not involving repeated bending, or heavy lift-

ing." On cross-examination Dr. Silver testified that it was usual to have pains during cold weather after an operation of that type.

The respondent testified that at the time of his injury he was a working foreman, and that he had to help load and unload the trucks which carried lumber, beams for cellars, and bags of cement weighing about 95 to 100 pounds each. In addition he had to supervise some of the men. His statement of how the accident occurred was essentially the same as the one he gave to Dr. Silver on his first visit. He further testified that he had been under the care of Dr. Silver from the day after the accident until the date of the hearing in the superior court; that he had not been employed since the accident; that he could not do much work because it hurt him to stand up or sit down too long; and that presently he was suffering from pain at the coccyx and in the lower back. He stated that he called on petitioners to see if they had any light job for him but they had none and although he did not feel that he was able to work in his present condition, yet if anybody would find him a light job he would be willing to try it. He presented no testimony that he himself had made an effort to get any kind of a job elsewhere, doing light or heavy work.

The respondent's appeal, as stated in his brief, is based on the ground "that the finding that respondent is only entitled to maximum partial payments and that he does not come within the principle often referred to as the 'odd-lot' in the labor market so as to entitle him to continue to receive the benefits as provided for total disability, is without any evidence to support it, is erroneous and against the law."

There was no finding in the decree as to the application of the "odd lot" doctrine, although it was referred to by the trial justice in his written decision. However, since respondent claims that such doctrine applies in the instant case and that the finding of partial incapacity and the award of maximum partial compensation based thereon is not supported

by any legal evidence, we shall discuss the applicability of the "odd lot" doctrine to the facts in the case at bar.

The trial justice gave careful consideration to the contention of respondent that he should apply the "odd lot" doctrine here. After setting out the particular facts which were relied on to support such a contention and certain deductions which he drew from the pertinent evidence in relation thereto, the trial justice came to the following conclusion: "Under such circumstances it is not the understanding of the Court that as a condition precedent to reduction of the employee from total to partial incapacity, the employer or insurance carrier must make a definite offer to him of a job tailored to his incapacity. His incapacity is such that there are many jobs that he can do and no precise tailoring seems here necessary."

In our opinion the testimony fully warrants the conclusion of the trial justice that the "odd lot" doctrine has no application here. In support of his contention, the respondent states in his brief: "A study of the transcript in this case indicates that the employer and employee are in almost complete agreement on the facts. In any event they are undisputed." While it is true that some of the facts are not in dispute, such as how the accident occurred and the nature and physical extent of respondent's injuries, yet the extent of his *incapacity*, which is one of the ultimate issuable facts, is not undisputed. It is in clear controversy.

Although respondent claims that he is unable to do any work at the present time but expresses a willingness to try to do any kind of light work if it is offered to him, his own physician who has supervised his treatment from the day after the injury repeatedly expressed his opinion that the respondent is able to do light work not involving repeated bending or heavy lifting. Clearly in the circumstances such physician was in a good position to appraise the extent of the present incapacity of the employee. Furthermore, whether the disability results in total or partial incapacity

is generally regarded as a question of fact. From a careful examination of the transcript we are of the opinion that there is legal evidence, either direct or by reasonable inference, to support all the findings of fact contained in the decree.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Boss & Conlan, Francis W. Conlan, for petitioners.*

*Dick & Carty, E. Harold Dick, Joseph B. Carty,* for respondent.